551 So.2d 477 (1988)
Guy TUTTLE and Janet Tuttle, His Mother, Appellants/Cross-Appellees,
v.
MIAMI DOLPHINS, LTD., a Florida Limited Partnership, Joseph Robbie and South Florida Sports Corporation, As General Partners of Miami Dolphins, Ltd., and Harry M. Stevens, Inc., a New York Corporation Authorized to Do Business in Florida, Appellees/Cross-Appellants, and the City of Miami, a Municipal Corporation, Appellee.
No. 86-1212.
District Court of Appeal of Florida, Third District.
April 26, 1988.
On Rehearing January 17, 1989.
On Rehearing July 11, 1989.
Rehearing Denied November 17, 1989.
*478 Phillip J. Goldstein, Goldstein Professional Assoc., Daniels & Hicks and Ralph O. Anderson, Miami, for appellants/cross-appellees.
Simon, Schindler, Hurst & Sandberg and Thomas M. Pflaum, Magill & Lewis and R. Fred Lewis, Miami, for appellees and cross-appellants.
Before HUBBART, BASKIN and DANIEL S. PEARSON, JJ.
On Rehearing En Banc July 11, 1989.
BASKIN, Judge.
Appellants Guy Tuttle and his mother Janet Tuttle sued Miami Dolphins, Ltd.; Joseph Robbie and South Florida Sports Corporation, as General Partners of Miami Dolphins, Ltd.; Harry M. Stevens, Inc. [Stevens], beer concessionaire under a contract with Miami Dolphins, Ltd.; and the City of Miami [City] to recover damages for injuries Guy sustained when he fell through a defective ramp rail guard at the Orange Bowl. In their fourth amended complaint, appellants alleged that Guy, then seventeen, became intoxicated upon consuming beer that he purchased at the *479 Orange Bowl while attending a Miami Dolphins football game. They asserted that they were entitled to recover damages predicated on the vicarious liability of Miami Dolphins, Ltd., and the direct liability of Stevens for the unlawful sale of beer to a minor. Their lawsuit also contended that the City failed to maintain the premises in a reasonably safe condition. The jury returned a verdict awarding Guy $475,000 and awarding Mrs. Tuttle $80,000 on her separate claim, apportioning the negligence of the respective parties: Dolphins/Stevens, 14%; City of Miami, 40%; Guy, 45%; Mrs. Tuttle, 1%.[1] The trial court granted appellees' ensuing motions for a new trial.
The Tuttles appeal the trial court's order, contending that the trial court abused its discretion in granting a new trial. Miami Dolphins, Ltd., and Stevens cross-appeal, maintaining that when appellants failed to prove that the sale of alcoholic beverages was willful, the trial court should have directed a verdict in their favor. After careful consideration of the law and the evidence, we conclude that both the appeal and the cross-appeal have merit; we reverse.
A decision to grant a new trial is directed to the sound, broad discretion of the trial court. The court may grant a new trial when it "concludes that the verdict is against the manifest weight of the evidence," or determines that the jury has either been influenced by considerations outside the record or misled by the force and credibility of the evidence. Cloud v. Fallis, 110 So.2d 669, 673 (Fla. 1959). However, this "broad discretion" does not give a trial judge unbridled discretion to order a new trial. White v. Martinez, 359 So.2d 7 (Fla. 3d DCA 1978). Thus, in order to facilitate review of orders granting a new trial, a trial court must set forth its reasons so that the appellate court may then ascertain whether the trial court has abused its discretion. Baptist Memorial Hosp., Inc. v. Bell, 384 So.2d 145 (Fla. 1980); Stewart Bonded Warehouse, Inc. v. Bevis, 294 So.2d 315, 317 (Fla. 1974). In Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978), the supreme court enunciated standards for preparing an order granting a new trial:
Although an order for a new trial need not incant language to the effect that the verdict is [1] against the manifest weight of the evidence or [2] was influenced by considerations outside the record, the order must give reasons which will support one of these two conclusions so that it will be susceptible of appellate review. See Thompson v. Williams, 253 So.2d 897 (Fla. 3d DCA 1971). Orders granting motions for new trials should articulate reasons for so doing so that appellate courts may be able to fulfill their duty of review by determining whether judicial discretion has been abused.
Wackenhut, 359 So.2d at 435.
In reviewing a discretionary grant of a new trial, appellate courts apply a test of reasonableness to determine whether the trial court abused its discretion. If reasonable people could differ as to the propriety of the action taken by the trial court, the action is not unreasonable and there can be no finding of an abuse of discretion. Ford Motor Co. v. Kikis, 401 So.2d 1341 (Fla. 1981); Baptist Memorial; Scandinavian World Cruises (Bahamas), Ltd. v. Cronin, 509 So.2d 1277 (Fla. 3d DCA 1987); Rivera v. White, 386 So.2d 1233 (Fla. 3d DCA 1980).
The trial court articulated five reasons for granting a new trial:
(a) The jury's finding that the MIAMI DOLPHINS and STEVENS were guilty of negligence which was a legal cause of injury to plaintiff, GUY TUTTLE (hereinafter GUY TUTTLE), is contrary to the manifest weight of the evidence. The finding of negligence had to be based upon STEVENS selling beer to GUY TUTTLE, a minor, for which the MIAMI DOLPHINS were vicariously liable, in *480 the context of this case. However, the statute governing liability of a person who sells alcoholic beverages to a minor for injury resulting from intoxication requires that the selling of the alcoholic beverage to the minor must be done willfully. Section 760.125, Florida Statutes. The testimony of GUY TUTTLE and his companions, Todd Danko and Jeff Cove, as to the manner in which he purportedly bought beer at the Orange Bowl on the night of November 20, 1980, the date of the accident, provided no evidentiary basis from which the jury could have lawfully found that STEVENS willfully sold beer to a minor. There was no other evidence adduced concerning the sale of the beer. Consequently, there was neither allegation nor proof of a willful sale of alcoholic beverages by STEVENS to a minor that the cited statute requires to support the finding of actionable negligence on the part of STEVENS and the MIAMI DOLPHINS.
(b) The jury's finding that MIAMI was guilty of negligence which was a legal cause of injury to GUY TUTTLE was contrary to the manifest weight of the evidence. The testimony of MIAMI's employees, Richard S. Roach, Edmond A. Connor and Walter Golby, did not provide any evidence from which the jury could have lawfully found that there was a failure by the city to properly maintain the ramps at the Orange Bowl. Their testimony established that MIAMI had never experienced an accident of the type of the one involving GUY TUTTLE prior to the date of his injury even though the ramps have been used by hundreds of thousands of patrons of the Orange Bowl; that it had a continuing inspection and maintenance program; and, that it had a method of warning Orange Bowl patrons of dangerous conditions that were discovered during stadium events. There was no evidence from any of the liability witnesses who testified from which the jury could have found that it was reasonably foreseeable that GUY TUTTLE, or anyone else, would engage in the course of unusual conduct upon which he embarked on the night of the subject accident and that led directly to the happening of the accident in which he was injured. His actions were graphically described in the testimony of JOHN STEWART HAYES. The testimony of Howard Harrenstein misled the jury into incorrectly assuming that MIAMI had a duty to guard against such exceptional or unusual occurrences. The testimony of Sher Fishman, a purported eyewitness to the accident, was so totally contrary to the physical facts of GUY TUTTLE's accident as to be unworthy of belief.
(c) The jury's finding that the plaintiff, JANET TUTTLE (hereinafter JANET TUTTLE), was guilty of only 1% negligence in the premises is contrary to the manifest weight of the evidence. The testimony of JANET TUTTLE to the effect that she was unaware that her son, GUY TUTTLE, had long been heavily indulging in the use of alcoholic beverages prior to the subject accident is not worthy of belief. The Jackson Memorial Hospital records that were introduced into evidence clearly show that GUY TUTTLE had a long standing drinking habit of major proportion which would have had to been noticeable to JANET TUTTLE had she been exercising proper supervision and care of her minor son. Nonetheless, she never advised her son that he was not of legal age to drink alcoholic beverages or that excessive consumption of alcoholic beverages led to the type of irrational conduct in which he was engaged at the time of the subject accident.
(d) Based upon the testimony of KENNETH LASSITER, M.D., and the information contained in the Jackson Memorial Hospital records, GUY TUTTLE's testimony that he had not consumed any alcoholic beverages before arriving at the Orange Bowl on the night of the subject accident is not worthy of belief. The jury was, therefore, deceived as to the force and credibility of the evidence in that respect.
(e) The amount of the damages awarded to JANET TUTTLE shocked the judicial conscience of the Court, because, there was no reasonable basis for award *481 of that magnitude in her testimony or that of GUY TUTTLE. It is evident that the jury acted through sympathy, prejudice or some other improper motive.
(f) For the foregoing reasons, considered individually and collectively, in the judgment of the Court the verdict in this case is contrary to the law on the issues presented; and, the verdict does not square with right and justice.
Turning first to the Tuttles' appeal, we consider their argument that the seller's failure to ask for proof of age before selling beer[2] to a minor is evidence of the willfulness the trial court found lacking.[3] They maintain that the court's first reason, the absence of proof of a willful sale, affords no basis for granting a new trial. Miami Dolphins, Ltd., and Stevens respond that the trial court was correct in finding an absence of proof regarding the willfulness of the sale, but assert that the court's finding entitled them to a directed verdict rather than a new trial. We agree. The record reflects that Guy Tuttle and two friends each purchased six or seven beers from Orange Bowl concessions and that the beer vendors neither asked the teenagers their respective ages nor requested identification. At trial, however, Guy failed to present evidence about his physical appearance at the time of the incident, six years earlier. It was therefore impossible for the jury to determine whether he looked younger than the statutory age so that the sale to a minor was, under the circumstances, "willful." When a record "conclusively shows an absence of facts or inferences from facts to support a jury verdict, viewing the evidence in a light most favorable to the nonmoving party," a directed verdict is proper. Ginsberg v. Chastain, 501 So.2d 27, 30 (Fla. 3d DCA 1986). Applying that standard, we conclude that the trial court erred in denying the motion of Miami Dolphins, Ltd., and Stevens for a directed verdict.
Next, we review the trial court's second reason for ordering a new trial. The jury found that the City was guilty of negligence which was a legal cause of injury to Guy Tuttle. Ample evidence supported the jury's conclusion that the City breached its duty to use reasonable care to maintain the premises in a reasonably safe condition and to warn Guy Tuttle of a dangerous condition of which it should have been aware. See Emmons v. Baptist *482 Hosp., 478 So.2d 440 (Fla. 1st DCA 1985), review denied, 488 So.2d 67 (Fla. 1986). Testimony disclosed that the panel through which Guy fell was not properly riveted, that the City's inspection plan, which was visual only, was inadequate to detect all defects, and that supply carts, which routinely damaged the panels, were used to transport materials up and down the spiral ramps. In addition, a beer concessionaire testified that he observed that the panel was detached from the angle iron support three hours before the accident. Other testimony reinforced eyewitness accounts supporting Tuttle's version of the accident. Thus, we hold that the jury's verdict was not contrary to the manifest weight of the evidence, and the court abused its discretion in granting a new trial.
The court's third and fourth reasons are improper grounds for granting a new trial.[4] A trial court may not invade the province of the jury by reweighing the credibility of the witnesses and the evidence. See Ludlum v. Rothman, 503 So.2d 974 (Fla. 4th DCA 1987); Crown Cork & Seal Co., Inc. v. Vroom, 480 So.2d 108 (Fla. 2d DCA 1985); Lopez v. Cohen, 406 So.2d 1253 (Fla. 4th DCA 1981). Certainly, the trial court may not act as a "seventh juror with veto power." Wackenhut, 359 So.2d at 437.
Similarly, the court's fifth reason fails. There is no record support for the trial court's conclusion that the "jury acted through sympathy, prejudice or some other improper motive." Tort damages are properly a subject for jury assessment. See Bould v. Touchette, 349 So.2d 1181 (Fla. 1977). The trial court's reasons for granting a new trial do not support its conclusion that the verdict was contrary to the manifest weight of the evidence; instead, they suggest only that the court disagreed with the jury's verdict, an improper reason for granting a new trial.
Reversed and remanded for proceedings consistent with this opinion.
HUBBART, J., concurs.
DANIEL S. PEARSON, Judge, concurring.
I agree that the order granting a new trial to the defendants must be set aside for the reasons stated in the majority opinion and that there is insufficient evidence in this case to support the jury's finding that Stevens willfully sold alcoholic beverages to the underage Guy Tuttle and is therefore liable  along with its concession grantor, the Dolphins  for Tuttle's ensuing injuries.
As the majority notes, Guy Tuttle testified that he was under the lawful drinking age when he purchased six or seven beers from Stevens' vendors and was asked neither his age nor for identification, nor was he told that he had to be nineteen years old to lawfully purchase beer. There was also evidence presented that as a rule the Orange Bowl beer vendors did not ask for proof of age, at best relied on a visual inspection of the prospective purchaser, and, at worst, on some occasions, responded to shouts for beer without ever having seen the person who passed the money in return for beer. Despite this, however, as the majority correctly observes, Guy Tuttle "failed to present evidence about his physical appearance at the time of the incident, six years earlier," making it "impossible for the jury to determine whether he looked younger than the statutory age" when the beer was sold.
While it is generally said that the existence of a physical condition at a subsequent time (here, the age which Guy Tuttle appeared to be at the time of trial) may be evidence of the physical condition at a prior time (here, the age which Guy Tuttle appeared to be at the time he purchased the beer at the Orange Bowl), the "limits of time over which such evidence may range must depend on the circumstance of each case." 2 J. Wigmore, Evidence § 225, at 8 (J. Chadbourn rev. ed. 1979). Illustrative of this principle is Hermann v. State, 73 Wis. 248, 41 N.W. 171 (1888), in which the jury's view of the witness at trial some 37 *483 days after the commission of the offense was sufficient evidence to prove that, at the time of the offense, the defendant should have known from the witness's appearance that she was under the age of 21. In the present case, Guy Tuttle was 17-1/2 years old when the accident occurred and 23-1/2 years old when he was observed at trial by the jury. Thus, the jury was called upon to conclude solely from Tuttle's appearance at age 23-1/2 that he had appeared younger than 19 when he bought the beer from the vendor six years earlier. This six-year gap might not be fatal in all cases. For example, if there were some indication in the record that Tuttle appeared at age 23-1/2 to be younger than 19, it might be arguable that the trial court did not abuse its discretion in allowing the jury to infer from Tuttle's youthful appearance at trial that he also looked younger than 19 when he purchased the beer. But, there being no such evidence in the record, the six-year gap is fatal in this case.[5]

ON REHEARING
DANIEL S. PEARSON, Judge.
In our initial opinion, we agreed with the defendants Miami Dolphins, Ltd. and Harry M. Stevens, Inc. that there was an absence of proof that the defendants had willfully sold beer to the minor plaintiff and that, therefore, the Dolphins and Stevens were entitled to a directed verdict. We reasoned that because Guy Tuttle "failed to present evidence about his physical appearance at the time of the incident, six years earlier ... [i]t was therefore impossible for the jury to determine whether he looked younger than the statutory age so that the sale to a minor was, under the circumstances, `willful.'" The concurring opinion observed that although Tuttle's appearance at trial might have sufficed to show that he looked underage at the time of the event six years earlier, Tuttle had failed to document for the appellate court  by, for example, a photograph  how he appeared at trial.
We have reconsidered our decision and conclude that we erroneously placed the burden on Tuttle to demonstrate on appeal that his appearance at trial was sufficient to prove that he appeared under the age of nineteen some six years earlier. The burden, of course, was on the appellants to make the opposite showing.
It is apodictic that the burden of showing error in an appellate court is the appellant's. E.g., Applegate v. Barnett Bank, 377 So.2d 1150 (Fla. 1979); Manis v. Prudhomme, 278 So.2d 292 (Fla. 4th DCA 1973). The error claimed must be shown in the record. Firkel v. Firkel, 391 So.2d 351 (Fla. 5th DCA 1980); Lyons v. Town of Lake Park, 153 So.2d 21 (Fla. 2d DCA 1963); Amphicar Corp. v. Gregstad Distributing Corp., 138 So.2d 383 (Fla. 3d DCA 1962); Broward County Port Authority v. F.M. Rule & Co., 119 So.2d 82 (Fla. 2d DCA 1960). The rule is the same in cases, such as the present one, where the challenge is to the sufficiency of the evidence. See Ben-Hain v. Tacher, 418 So.2d 1107 (Fla. 3d DCA 1982); Damkohler v. Damkohler, 336 So.2d 1243 (Fla. 4th DCA 1976); Brown v. Householder, 134 So.2d 801 (Fla. 2d DCA 1961). See generally 5 M. Belli, Modern Trials § 71.3, at 456 (2d ed. 1982) ("In all jurisdictions there is the general rule that he who complains on appeal must specify his complaint or it will be presumed that, in the absence of factual showing, there was sufficient proof and regularity in the trial court below to support the judgment."). Where, then, the appellant does not satisfy this burden of demonstrating error in the record, the appellate court will invoke the presumption of correctness, see Peters Machinery Corp. v. Blairsville Machine Products Co., 413 So.2d 802 (Fla. 3d DCA 1982); Damkohler v. Damkohler, 336 So.2d 1243; Strickland v. Jacobs, 235 So.2d 747 (Fla. 1st DCA 1970), and "[t]here being no record of what evidence the court considered," affirm. Mutual Life Insurance Co. v. Okun, 485 So.2d 897, 899 (Fla. 4th DCA 1986). See *484 Cohen v. Cohen, 70 So.2d 362 (Fla. 1954); Ben-Hain v. Tacher, 418 So.2d 1107; Fernandez v. Arocha, 308 So.2d 45 (Fla. 3d DCA 1975); Broward County Port Authority v. F.M. Rule & Co., 119 So.2d 82.
These principles are usually applied where the evidence presented to the trial court can readily be, but is not, made a part of the record, as in the case of unrecorded testimony, Cohen v. Cohen, 70 So.2d 362 (Fla. 1954); Firkel v. Firkel, 391 So.2d 351; Damkohler v. Damkohler, 336 So.2d 1243; Brown v. Householder, 134 So.2d 801, or documents and other tangible items which are capable of being introduced as exhibits, Fernandez v. Arocha, 308 So.2d 45; Manis v. Prudhomme, 278 So.2d 292; Lyons v. Town of Lake Park, 153 So.2d 21; Amphicar Corp. v. Gregstad Distributing Corp., 138 So.2d 383; Broward County Port Authority v. F.M. Rule & Co., 119 So.2d 82. The present case differs only in that the evidence  Tuttle's appearance at trial  is by its nature impermanent and requires memorialization if its probative value is to be reviewed on appeal.
Merely because special efforts must be made to preserve for appeal those matters which otherwise would not be included in the record does not relieve the appellants from their burden on appeal.[1]See M. Dombroff, Demonstrative Evidence § 10.12, at 214 (1983) (where demonstrations or experiments are performed in the trial court, photographs of those demonstrations or experiments should be introduced for later inclusion in the appellate record). Here, how the plaintiff looked at the time of trial may or may not have been sufficient for the jury to determine that he looked like a minor when he purchased the beer.[2] But because the plaintiff's appearance at trial was not memorialized for inclusion in the record, this court cannot determine whether his appearance was such that no reasonable-minded jury could have concluded that six years earlier he looked younger than the age of nineteen. The point simply is that we, as an appellate court, do not know how the plaintiff looked at trial, and if the appellants want to complain that the trial court should have granted a directed verdict in their favor, it is up to them to show us that this evidence was insufficient. Indeed, had the trial court granted the defendants' motion for directed verdict on the ground that the plaintiff's appearance at trial was not sufficient to prove that he appeared underage at the time of the event, then the plaintiff, on an appeal from that ruling, would have been faced with the identical burden of demonstrating the error, and because his appearance at trial was not memorialized, his appeal would fail. Thus  unless one can confidently forecast the trial court's ruling  it is in the best interest of both parties *485 to see to it that such evidence is documented. Because no error in the trial court's denial of the defendants' motion for directed verdict has been shown, the judgment below must be affirmed.
Accordingly, we adhere to our original opinion in reversing the order granting a new trial to the defendants. On the cross-appeal of the defendants, Miami Dolphins Ltd. and Harry M. Stevens, Inc., we affirm the trial court's order denying their motions for directed verdict. Upon remand, the final judgment entered for the plaintiffs upon the verdict of the jury is to be reinstated.
BASKIN, Judge (dissenting).
I disagree with the majority's approval of the denial of a directed verdict for defendants. To establish defendants' liability, Tuttle had to prove they willfully sold beer to a minor. He failed to meet his burden. In fact, the trial court stated as a reason for granting a new trial:
(a) The jury's finding that the MIAMI DOLPHINS and STEVENS were guilty of negligence which was a legal cause of injury to plaintiff, GUY TUTTLE (hereinafter GUY TUTTLE), is contrary to the manifest weight of the evidence. The finding of negligence had to be based upon STEVENS selling beer to GUY TUTTLE, a minor, for which the MIAMI DOLPHINS were vicariously liable, in the context of this case. However, the statute governing liability of a person who sells alcoholic beverages to a minor for injury resulting from intoxication requires that the selling of the alcoholic beverage to the minor must be done willfully. Section 760.125, Florida Statutes. The testimony of GUY TUTTLE and his companions, Todd Danko and Jeff Cove, as to the manner in which he purportedly bought beer at the Orange Bowl on the night of November 20, 1980, the date of the accident, provided no evidentiary basis from which the jury could have lawfully found that STEVENS willfully sold beer to a minor. There was no other evidence adduced concerning the sale of the beer. Consequently, there was neither allegation nor proof of a willful sale of alcoholic beverages by STEVENS to a minor that the cited statute requires to support the finding of actionable negligence on the part of STEVENS and the MIAMI DOLPHINS. (Emphasis supplied).
In their cross-appeal, Miami Dolphins, Ltd., and Stevens contend that the trial court's finding that Tuttle failed to prove a willful sale entitled them to a directed verdict. I agree.
A directed verdict is appropriate when a record "conclusively shows an absence of facts or inferences from facts to support a jury verdict, viewing the evidence in a light most favorable to the nonmoving party." Ginsberg v. Chastain, 501 So.2d 27, 30 (Fla. 3d DCA 1986). The record reflects that Guy Tuttle and two friends each purchased six or seven beers from Orange Bowl concessions and that the beer vendors neither asked the teenagers their respective ages nor requested identification. The failure to request identification is not dispositive: "inculpatory knowledge of the age of a particular person may be proved by direct evidence of actual knowledge or such knowledge may be established by circumstantial evidence," Willis v. Strickland, 436 So.2d 1011, 1012-13 (Fla. 5th DCA 1983), review denied sub nom., ABC Liquors, Inc. v. Willis, 446 So.2d 99 (Fla. 1984); see also Gorman v. Albertson's, Inc., 519 So.2d 1119 (Fla. 2d DCA 1988); French v. City of West Palm Beach, 513 So.2d 1356 (Fla. 4th DCA 1987); a person's appearance, for example, may impart knowledge. Willis. At trial, however, Tuttle failed to present evidence about his physical appearance at the time of the incident, six years earlier. It was therefore impossible for the jury to determine whether he looked younger than the statutory age so that the sale to a minor was, under the circumstances, "willful."[1] The trial *486 court found that Tuttle presented no evidence to support a jury verdict in his favor.[2] Under these circumstances, the court should have directed a verdict for defendants.
The majority, however, declines to instruct the trial court to enter a directed verdict holding, instead, that defendants should have supplied the missing evidence. The majority requires defendants to disprove Tuttle's age in order to prevail in this appeal! That holding imposes a requirement neither envisioned by the pleadings, nor urged at trial, and constitutes a departure from customary trial practice.
Defendants met their appellate burden when they pointed to plaintiff's failure to prove his case. Defendants are not required to negate an unproved claim in order to prevail on appeal; the lack of proof in the record entitles them to a directed verdict. I would instruct the trial court to grant the motion of Miami Dolphins, Ltd., and Stevens for a directed verdict.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY and GERSTEN, JJ.

ON PETITION FOR REHEARING EN BANC
PER CURIAM.
Upon consideration of appellees/cross-appellants' petition for rehearing en banc and appellants' response, this court finds that the opinion filed January 17, 1989, does not maintain the uniformity of this court's prior decisions. Fla.R.App.P. 9.331(c)(1). Accordingly, we grant the petition for rehearing en banc, vacate the opinion filed January 17, 1989, entered on rehearing, and reinstate our original opinion filed April 26, 1988.
SCHWARTZ, C.J., and BARKDULL, NESBITT, BASKIN, JORGENSON, LEVY and GERSTEN, JJ., concur.
HUBBART, J., dissents.
COPE, J., would set for oral argument.
NOTES
[1] The Final Judgment in Favor of Plaintiff reflects that the trial court awarded Guy Tuttle $261,250.00 and awarded Janet Tuttle $43,200.00. The verdict finding Mrs. Tuttle negligent was based on her failure to control her son's overall conduct, especially his consumption of alcohol.
[2] Section 562.11, Florida Statutes (Supp. 1980), provides:

Selling, giving, or serving alcoholic beverages to persons under age 19 prohibited.  (1)(a) It is unlawful for any person to sell, give, serve, or permit to be served alcoholic beverages to a person under 19 years of age or to permit a person under 19 years of age to consume said beverages on the licensed premises... .
Section 768.125, Florida Statutes (Supp. 1980), however, limits liability of vendors of intoxicating beverages, Migliore v. Crown Liquors of Broward, Inc., 448 So.2d 978 (Fla. 1984), and provides:
Liability for injury or damage resulting from intoxication.  A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a person who is not of lawful drinking age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.
[3] In Armstrong v. Munford, Inc., 451 So.2d 480 (Fla. 1984), the supreme court held that section 768.125 requires that the selling or furnishing of the alcoholic beverage to a minor must be done "willfully." A "willful" sale requires knowledge that the recipient is not of lawful drinking age.

However, such inculpatory knowledge of the age of a particular person may be proved by direct evidence of actual knowledge or such knowledge may be established by circumstantial evidence. Circumstantial evidence of such knowledge may consist of facts relating to the apparent age of a person. The appearance of a person alone can impart knowledge of his or her age within certain ranges and to certain degrees of certainty. Whether it does or not in a particular instance, and to what extent, would normally be a question of fact for the jury to determine.
Willis v. Strickland, 436 So.2d 1011, 1012-13 (Fla. 5th DCA 1983), review denied sub nom., ABC Liquors, Inc. v. Willis, 446 So.2d 99 (Fla. 1984); see Gorman v. Albertson's, Inc., 519 So.2d 1119 (Fla. 2d DCA 1988). See also French v. City of West Palm Beach, 513 So.2d 1356 (Fla. 4th DCA 1987).
[4] Appellees conceded at oral argument that reasons three through five were invalid. Our disposition of the cross-appeal renders consideration of the fourth reason unnecessary.
[5] Of course, a picture depicting Guy Tuttle near the time of the accident might very well have overcome the deficiency. None was presented.
[1] The defendants could have preserved their sufficiency point, which turns on the age that Tuttle appeared to be at trial and, by inference, six years earlier, by the use of photographs. Similarly, the issue might have been preserved if the trial had been videotaped. See Note, Videotaped Trial Court Proceedings: The Potential Effect on Appellate Review of Credibility Determinations, 11 Nova L.Rev. 1585, 1606 (1987); 5 M. Belli, Modern Trials § 71.3, at 456 n. 12 (2d ed. 1982) ("Without the use of sound motion pictures, this sort of demonstrative evidence [body movements by witnesses], of course, cannot be preserved for appeal.").
[2] The appellants' claim that the jury's view of Tuttle at trial cannot support its verdict is similar to the claim that proof may not be admitted into evidence unless it is of the sort that can later be transmitted to the appellate court. This latter claim  prompted by the concern that the losing party will be unable to obtain proper review by the higher court  has been generally repudiated. 4 J. Wigmore, Evidence § 1168, at 381-82 (J. Chadbourn rev. ed. 1972). One of the reasons for the rejection of this argument is that "a verdict objected to as against the weight of evidence might nevertheless be supported on appeal for the very reason that the jury might have proceeded in part upon knowledge obtained at a view which could not be fully laid before the appellate court." Id. § 1168, at 383-84. See also United States v. Skinner, 425 F.2d 552, 555 (D.C. Cir.1970) ("It is no objection to a demonstration presented as visual evidence that it is practically impossible to transmit to an appellate court for review as the same is true of much other evidence."); Hart v. State, 15 Tex. App. 202, 229 (1883) (same; "A juror, to be competent and fit for jury service, should not be defective in the organs of seeing any more than in his organs of feeling or hearing, and he often sees, and rightly sees and acts upon, many things `which cannot be incorporated in the record.'") (citation omitted; emphasis in original).
[1] As Judge Pearson observed in the original opinion: Guy Tuttle was 17 1/2 years old at the time of the accident, and was 23 1/2 years old at the time of trial. No evidence was introduced concerning Tuttle's appearance at the time he purchased the beer. Had there been some evidence in the record that Tuttle looked younger than 19 years old at the time of trial, one might argue that the jury could infer from Tuttle's appearance that he also looked younger than 19 when he purchased the beer. However, there was no such evidence in the record.
[2] Tuttle's counsel did not ask the court to permit the record to reflect Tuttle's appearance at trial. Thus, there is no basis for this court to consider the propriety of possible inferences. The court should refrain from speculation and abide by the trial court's finding that the record contained no evidence concerning the sale of beer.