711 So.2d 606 (1998)
UNIROYAL TIRE COMPANY, a foreign corporation, and General Motors Corporation, a foreign corporation, Appellants/Cross-Appellees,
v.
Vivian TRUJILLO, Appellee/Cross-Appellant.
No. 96-1411.
District Court of Appeal of Florida, Third District.
May 13, 1998.
Rehearing Denied June 17, 1998.
Carlton, Fields, Ward, Emmanuel, Smith & Cutler and Wendy F. Lumish and Jeffrey A. Cohen, Miami, for appellants/cross-appellees.
Stabinski & Funt, Miami; and Bambi G. Blum, Miami, for appellee/cross-appellant.
Before JORGENSON, COPE and SORONDO, JJ.
PER CURIAM.
Uniroyal Tire Company and General Motors Corporation (defendants), appeal from *607 the lower court's order granting an additur and/or new trial based upon findings that the verdict was inconsistent and fundamentally improper. Vivian Trujillo (plaintiff), cross-appeals from the denial of her motion for a directed verdict on the seat belt and negligent maintenance defenses and raises claims regarding evidentiary issues in any subsequent retrial. We find the cross-appeal to be without merit and therefore discuss only the initial appeal.
In June 1985, plaintiff was driving a 1984 Suburban when a tire blew. She slammed on the brakes and lost control of the vehicle, which left the roadway and rolled, ejecting her. Plaintiff was not wearing a seat belt. She sustained several injuries, most significantly a fracture of her spine at the C-2 level. She was hospitalized for 19 days and placed in traction, fitted with a halo brace for four months and a cervical collar for two months more. The parties agreed that plaintiff incurred $16,981 in medical expenses.
Plaintiff initially sued alleging that a defect in the tire caused the accident. The parties ultimately agreed that the tire blew due to an improper repair, an external plug used rather than an internal patch. No evidence was ever adduced as to when the tire was initially damaged, who took the tire to be repaired or who performed the improper repair. The Suburban was leased by plaintiff's company and plaintiff was its primary driver. Plaintiff ultimately proceeded to trial on the sole liability issue of whether the defendants placed the tire on the market with a defect, by virtue of the failure to warn her of the risk in failing to properly repair punctures in tires by using external plugs. At trial, plaintiff testified that she should have been warned not to plug a tire. Plaintiff's testimony, that had the defendants given such a warning, she would have read it and directed the repair facility to repair the tire correctly, was stricken upon defendants' motion, and the trial court instructed the jury to disregard this evidence. One of plaintiff's accident reconstruction experts, Jordan, testified that Firestone and Michelin warranties contained warnings that external plug repairs should not be used.
Defendants presented evidence that the tire and vehicle warranties and owners' manual warned that serious injury may result from tire failure due to under inflation and that owners should not attempt to effect a repair on their own. Defendants presented evidence of widely available information disseminated to automotive and tire repair facilities by Uniroyal and the Rubber Manufacturers Association about proper repair procedures, cautioning about external plug repairs. Plaintiff's expert, Edwards, agreed it was common knowledge that it is improper to use a plug alone. Defendants' experts opined that the warning proposed by plaintiff was infeasible and insufficient, and that the better way to warn consumers was to instruct them to take their vehicles in for repairs and to warn them about the danger of under inflation, rather than the causes of the danger.
The parties introduced conflicting evidence regarding the speed of plaintiff's vehicle. Plaintiff testified she was driving between 50 and 65 mph, while defendants' accident reconstructionist, Larry Tomlinson, opined that she was driving 75 mph when the tire failed. Tomlinson testified that plaintiff's vehicle would not have gone off the road if she had been traveling at 55 to 67 mph. Tomlinson also testified that hard braking is improper when a tire fails, and opined that if plaintiff had not slammed on the brakes the vehicle would not have left the roadway and overturned.
Plaintiff's medical expert, Dr. Goodgold, testified that plaintiff's spinal injury was the result of a hyperextension of her neck from either hitting against the roof of the vehicle with her head back or ejection from the vehicle. Tomlinson testified that had plaintiff been belted, she would not have hit her head on the roof and would not have been ejected. Plaintiff's expert, Nunn, testified that the vehicle was fitted with a seat belt with a comfort feature that would not automatically retract. Nunn opined that even if she had worn her seat belt it may not have prevented her from hitting her head on the roof in the rollover, as it was designed to lock upon frontal impacts. Tomlinson testified *608 that braking would have locked the shoulder harness of plaintiff's seat belt.
Plaintiff missed work for four months and afterwards worked part time.[1] Plaintiff's treating physician, Dr. Dusseau, testified that plaintiff's C-2 injury was a broken bone and that she sustained no injury to her spinal cord. Through her follow-up treatment the bone healed and plaintiff continued to report no pain. Dr. Dusseau testified that plaintiff suffered no neurological deficits at that time. After the cervical collar was removed, Dr. Dusseau instructed plaintiff to resume her normal activities, although he cautioned her to eliminate contact sports. Plaintiff's expert, Dr. Goodgold, did not participate in her treatment, but opined that plaintiff lost 30% of her ability to rotate and move her neck. Dr. Dusseau disagreed with this rating and testified that based on plaintiff's condition six months after the accident, she would qualify for a 4% permanent impartial rating. Plaintiff testified that she also suffered a loss of sensation in her neck and scalp, suffered memory loss and had weakness in her upper left extremity. However, plaintiff admitted that she never reported these symptoms to Dr. Dusseau when he treated her and did not identify these complaints until she answered interrogatories in 1989.
The jury returned a verdict finding against defendants on the liability issue but attributing 99% comparative negligence to plaintiff. The jury awarded $16,981 for medical expenses and lost earnings, $0 for future damages of any type, and $10,000 for past pain, suffering and physical impairment. The jury further found that plaintiff failed to use reasonable care by failing to use an available and operational seat belt, determining that 100% of plaintiff's damages were caused by this failure.
Following trial, the court denied defendants' motion for a judgment in accordance with their directed verdict motion. The trial court entered an order finding that the jury's verdict was inconsistent and fundamentally improper, that the failure to use plaintiff's proposed verdict form was error because the jury was allowed to "double dip" on the issues of comparative fault and the seat belt defense, and that the damages awarded were shockingly low and against the manifest weight of the evidence. The trial court order awarded plaintiff an additur in the amount of $26,981, or in the event that the defendants declined the additur, granted a new trial on all issues. The defendants rejected the additur and appeal.
We have thoroughly reviewed the trial transcript and record in this case and conclude that there was substantial competent evidence to support the jury's verdict. The trial judge's conclusion that there was no evidence that plaintiff's alleged negligence caused the tire failure is simply incorrect. There was testimony that the plaintiff's tires suffered from chronic under inflation which condition could have caused the blowout. There was additional testimony that plaintiff was speeding at the time the tire blew and that she responded poorly by locking her brakes. As noted above, the defendant's expert, Tomlinson, testified that plaintiff was driving 75 mph when the tire failed. He opined that had she been traveling between 55 and 67 mph her vehicle would not have gone off the road. He further testified that had she not slammed on her brakes the car would not have left the roadway and overturned. This evidence, along with the other highly disputed facts of this case, created credibility issues which were properly for the jury to decide. See Tuttle v. Miami Dolphins, Ltd., 551 So.2d 477, 482 (Fla. 3d DCA 1988)("A trial court may not invade the province of the jury by reweighing the credibility of the witnesses and the evidence"). As the Fourth District Court of Appeal stated in Ludlum v. Rothman, 503 So.2d 974 (Fla. 4th DCA 1987):
There was sufficient competent evidence to support the verdict and it should not have been nullified even though the trial court obviously thought the plaintiff should have prevailed.
Id. at 975.
The trial court further found that "the damages awarded were inadequate given *609 all the circumstances and against the manifest weight of the evidence." The law is clear that a verdict is against the manifest weight of the evidence only when it is clear, obvious, and indisputable that the jury was wrong. See Becker v. Williams, 652 So.2d 1182 (Fla. 4th DCA 1995); Bern v. Spring, 565 So.2d 809 (Fla. 3d DCA 1990); Andrews v. Tew, 512 So.2d 276 (Fla. 2d DCA 1987); Crown Cork & Seal Co. v. Vroom, 480 So.2d 108 (Fla. 2d DCA 1985). In applying this standard, we conclude that the trial court abused its discretion in granting a new trial.
We reverse the order granting the motion for new trial and remand with instructions to reinstate the jury's verdict.
NOTES
[1] The evidence established that plaintiff and her husband owned their own business. No evidence of loss was presented for the year of the accident. There was evidence that plaintiff's business improved each successive year, as did plaintiff's personal income.