# Supreme Court of Florida

---

No. SC2022-0910

---

**GUARDIANSHIP OF JACQUELYN ANNE FAIRCLOTH,**
Petitioner,

vs.

**MAIN STREET ENTERTAINMENT, INC., etc.,**
Respondent.

March 7, 2024

MUÑIZ, C.J.

We accepted jurisdiction to review the decision of the First District Court of Appeal in *Main Street Entertainment, Inc. v. Faircloth*, 342 So. 3d 232 (Fla. 1st DCA 2022). There the district court passed on and certified the following question as one of great public importance:

> Whether the comparative fault statute, section 768.81, Florida Statutes, applies to tort actions involving the dram-shop exception contained in section 768.125, Florida Statutes, against a vendor who willfully and unlawfully sold alcohol to an underage patron, resulting in the patron's intoxication and related injury?

*Id.* at 249.

To unpack the certified question, we note that section 768.81[1] says that percentage-of-fault-based liability, rather than joint and several liability, governs a "negligence action." § 768.81, Fla. Stat. In turn, section 768.125 permits liability when a person "willfully and unlawfully" provides alcohol to an underage patron and intoxication and injury ensue. § 768.125, Fla. Stat. The issue is whether the action permitted by section 768.125 is a "negligence action," even though the statute requires willful misconduct.

Without approving all the district court's reasoning, we agree that the answer to the certified question is yes: the action permitted by the underage drinker exception in section 768.125 is a negligence action for purposes of the comparative fault statute, section 768.81.

I

Late one night in November 2014, a speeding pickup truck struck 18-year-old Jacquelyn Faircloth as she crossed a street on foot. The driver of the truck was Devon Dwyer, age 20. Both Dwyer

---

1. All statutory citations in this opinion refer to the 2014 edition of the Florida Statutes, the year the accident occurred.

and Faircloth were intoxicated at the time of the collision. Tragically, Faircloth suffered catastrophic and permanent injuries.

Faircloth's guardianship later sued Potbelly's and Cantina 101, two Tallahassee bars, seeking money damages. Without explicitly invoking section 768.125, the complaint alleged that Potbelly's and Cantina 101 had "willfully and unlawfully" served alcoholic beverages to Dwyer and Faircloth, respectively. The complaint said that each of the underage drinkers then became intoxicated, and that their intoxication caused the accident. Dwyer's intoxication impaired his driving, the complaint said, and Faircloth's intoxication led her to step into the street in front of Dwyer's oncoming truck.

Potbelly's responded with a comparative fault defense, arguing that any fault attributable to Faircloth should reduce the bar's liability. But the trial court rejected that defense before trial. The court decided that, since section 768.125 requires willful misconduct, the guardianship's lawsuit was not a "negligence action" for purposes of the comparative fault statute. Indeed, the trial court ruled that the lawsuit was based on an intentional tort.

Potbelly's stipulated at trial that it had willfully and unlawfully served alcoholic beverages to Dwyer. The bar's defense focused on the causation element of the guardianship's claim. Potbelly's argued that Dwyer was not intoxicated at the time of the accident—and that, even if he was, his intoxication did not cause the collision. Potbelly's maintained that the accident was unavoidable once Faircloth darted in front of Dwyer's oncoming truck.

The jury rejected Potbelly's' arguments and found the bar liable. So the trial court entered final judgment for $28.6 million against Potbelly's and Cantina 101, jointly and severally. Cantina 101 had defaulted and did not appear at trial.

Over a dissent, the First District reversed the judgment on appeal. The district court held that the trial court should have allowed Potbelly's to assert a comparative fault defense under section 768.81. After reviewing the background of section 768.125 and this Court's precedents, the district court concluded: "Following the statute's enactment, selling or furnishing alcohol to a minor must be done willfully for the vendor to be liable, but the vendor is liable in negligence, not an intentional tort." *Main St. Ent., Inc.*, 342 So. 3d at 235.

The First District then decided *how* fault could be allocated in this case: "We hold that Potbelly's may raise a comparative negligence defense between itself and, ultimately, Cantina 101 as derivatively liable entities; not between Potbelly's and its underage patron [Dwyer]; and not between Potbelly's and Cantina 101's underage patron [Faircloth]." *Id.* at 237. The court reasoned that, as "derivatively liable" entities, each bar was responsible for *all* the fault attributable to the underage drinker it had served. *Id.* at 236-37.

We agree with the First District that the underage drinker exception in section 768.125 permits a negligence action. But we neither approve nor disapprove the district court's "derivative liability" analysis and its conclusion that liability cannot be apportioned between a selling bar and the underage drinker who becomes intoxicated and injures himself or others. The latter issues are outside the scope of the certified question, and we will not address them further.

II

Everyone agrees that the underage drinker exception in section 768.125 includes a willfulness requirement. The

- 5 -

guardianship insists this means that the action permitted by section 768.125 is not a negligence action.  We disagree.

A

The common law traditionally held that "a commercial vendor of alcoholic beverages could not be liable for the negligent sale of those beverages when either the purchaser or third persons were injured as a result of their consumption."  *Ellis v. N.G.N. of Tampa, Inc.*, 586 So. 2d 1042, 1044 (Fla. 1991).  Courts usually reasoned that the drinker—rather than the alcohol provider—should be liable.  But seminal decisions in 1959 by the New Jersey Supreme Court and the U.S. Court of Appeals for the Seventh Circuit kicked off a national trend toward expanded common law liability in this area.

By 1967, Florida courts had set aside the common law's no-liability-for-providers rule when injuries stemmed from the illegal sale of alcohol to underage drinkers.  First, in *Davis v. Shiappacossee*, 155 So. 2d 365 (Fla. 1963), our Court found a bar liable to the parents of a 16-year-old boy who had purchased alcohol from the bar, become intoxicated, driven his car into an oak tree, and died.  Then, in *Prevatt v. McLennan*, 201 So. 2d 780 (Fla.

- 6 -

2d DCA 1967), the Second District Court of Appeal found a tavern liable to a third party shot by an underage drinker to whom the tavern had sold alcohol.

The courts in *Davis* and *Prevatt* grounded liability on a theory of negligence per se. *Davis*, 155 So. 2d at 367; *Prevatt*, 201 So. 2d at 781. That theory derives a governing standard of care from statutes that do not on their face create tort liability. A "plaintiff who claims that the defendant was negligent per se in violating a safety statute is not claiming a new species of tort but simply asserting an ordinary negligence claim." Dan B. Dobbs et al., *The Law of Torts* § 148, at 467 (2d ed. 2011). Like Potbelly's here, the defendant bars in *Davis* and *Prevatt* had violated section 562.11, Florida Statutes, which makes it a misdemeanor to provide alcoholic beverages to underage persons.

Establishing negligence per se satisfies only one element of the plaintiff's negligence cause of action—the breach element. The plaintiff must also establish "1) that he is of a class the statute was intended to protect; 2) that he suffered injury of the type the statute was designed to prevent; and 3) that violation of the statute was the

proximate cause of the injury." *Bryant v. Jax Liquors*, 352 So. 2d 542, 544 (Fla. 1st DCA 1977).

The pre-1980 case law in this area further required the plaintiff to prove that the defendant knew or should have known that it was selling alcohol to a minor. In its seminal *Rappaport* decision, for example, the New Jersey Supreme Court stressed that liability would not attach to "prudent licensees who do not know or have reason to believe that the patron is a minor or is intoxicated when served." *Rappaport v. Nichols*, 156 A.2d 1, 10 (N.J. 1959). Similarly, in *Davis*, this Court found liability where the defendant had "made no effort" to ensure the lawfulness of the sale of alcohol, even though "[f]rom their ages it must have been apparent to anyone who bothered to look that the purchasers were but boys." 155 So. 2d at 367; *see also Migliore v. Crown Liquors of Broward, Inc.*, 448 So. 2d 978, 978 (Fla. 1984) (finding liability where the plaintiff alleged that the defendant bar "knew or should have known that" the purchaser was a minor); *cf. Tamiami Gun Shop v. Klein*, 116 So. 2d 421, 422 (Fla. 1959) (illegal gun sale to "an obvious minor" was negligence per se).

B

Such was the state of the common law in 1980, when the Legislature enacted section 768.125.  *See* ch. 80-37, § 1, Laws of Fla.  That statute reads:

> A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person who willfully and unlawfully sells or furnishes alcoholic beverages to a person who is not of lawful drinking age or who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such minor or person.

§ 768.125, Fla. Stat.  We explained in *Ellis* that section 768.125 "effectively codified the original common law rule absolving vendors from liability for sales," subject to the two "exceptions" specified in the statute.  586 So. 2d at 1046.

As to cases involving the illegal sale of alcohol to underage patrons, section 768.125 left the preexisting common law largely intact.  The statute did not create a new cause of action to address injuries flowing from such sales.  *Migliore,* 448 So. 2d at 980.  Instead, with one qualification, section 768.125 assumed that the common law would continue to govern in this area.  This is evident

- 9 -

from the statute's overall focus on limiting preexisting liability and from the text's use of the phrase "may become liable," suggesting qualified permission for continued application of the existing common-law framework. *See id.* at 981 ("When the legislature enacted this statute it was presumed to be acquainted with the judicial decisions on this subject, including *Davis* and *Prevatt.*").

To be sure, section 768.125 did modify the common law by limiting liability to situations where the sale to an underage patron is done *both* "willfully" and "unlawfully." The "unlawfully" requirement brought nothing new—the negligence per se-based cases already required proof that the alcohol provider had violated section 562.11. The term "willfully," as used in section 768.125, simply means that the alcohol provider *knew* that the recipient was under age 21. *See Case v. Newman,* 154 So. 3d 1151, 1153 (Fla. 1st DCA 2014) ("willful" sale requires knowledge that the recipient is not of lawful drinking age); *Tuttle v. Miami Dolphins, Ltd.,* 551 So. 2d 477, 481 n.3 (Fla. 3d DCA 1988) (same); *French v. City of W. Palm Beach,* 513 So. 2d 1356, 1358 (Fla. 4th DCA 1987) (same); *Publix Supermarkets, Inc. v. Austin,* 658 So. 2d 1064, 1067 (Fla. 5th DCA 1995) (same). District courts of appeal have held that the

- 10 -

seller's knowledge can be proven through circumstantial evidence. *See Gorman v. Albertson's, Inc.*, 519 So. 2d 1119, 1120 (Fla. 2d DCA 1988); *Willis v. Strickland,* 436 So. 2d 1011, 1012 (Fla. 5th DCA 1983) ("Circumstantial evidence of such knowledge may consist of facts relating to the apparent age of a person.").

## C

This brings us to the guardianship's argument that, by including a willfulness requirement, section 768.125 eliminated the preexisting negligence cause of action and replaced it with something other than a negligence action. The negligence label matters, of course, because the guardianship seeks to avoid the application of the comparative fault statute, section 768.81(3). That statute says: "In a negligence action, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." § 768.81(3), Fla. Stat. It "does not apply . . . to any action based upon an intentional tort." § 768.81(4), Fla. Stat.

Under the comparative fault statute, a "negligence action" includes "a civil action for damages based upon a theory of negligence." § 768.81(1)(c), Fla. Stat. The statute further instructs

- 11 -

that "[t]he substance of an action, not conclusory terms used by a party, determines whether an action is a negligence action."  *Id.*

The law of torts teaches that negligence is "conduct which falls below a standard established by the law for the protection of others against unreasonable risk of harm."  William L. Prosser, *Handbook of the Law of Torts* § 31, at 146 (4th ed. 1971).  For negligence to be actionable, of course, the unreasonably dangerous conduct must result in injury to the plaintiff.  But "[i]n negligence, the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain to occur, or believe that they will."  *Id.* at 145.

The relationship between the defendant's conduct and the plaintiff's injury distinguishes negligence from an intentional tort.  Our Court has said that an intentional tort is "one in which the actor exhibits a deliberate intent to injure or engages in conduct which is substantially certain to result in injury or death."  *D'Amario v. Ford Motor Co.*, 806 So. 2d 424, 438 (Fla. 2001), *overruled by legislative action*, ch. 2011-215, §§ 2-3, Laws of Fla.  This tracks the most recent Restatement of Torts, which says: "In general, the intent required in order to show that the defendant's

conduct is an intentional tort is the intent to bring about harm (more precisely, to bring about the type of harm to an interest that the particular tort seeks to protect)." Restatement (Third) of Torts: Phys. & Emot. Harm § 1, cmt. b (2010).

Now consider section 768.125. The statute's willfulness requirement means that the plaintiff must prove the defendant knew that the purchaser was underage. To that extent, the defendant's misconduct is intentional. But that is different from the type of intent that takes conduct out of the negligence realm and into the realm of an intentional tort. "[I]ntentional conduct and even intentional risk-taking is analyzed under negligence rules unless the defendant has a purpose to invade the plaintiff's legally protected interests or a certainty that such an invasion will occur." Dobbs et al., *supra*, § 126, at 397; *cf. Martin v. Herzog*, 126 N.E. 814, 815 (N.Y. 1920) (Cardozo, J.) ("By the very terms of the hypothesis, to omit, *willfully or heedlessly*, the safeguards prescribed by law for the benefit of another that he may be preserved in life or limb, is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform." (emphasis added)).

Viewed against the common law baseline, the willfulness requirement in section 768.125 does not change the basic relationship between the seller-defendant's conduct and the plaintiff's injury. Instead, section 768.125 merely limits liability to a subset of the actors who could have been found liable under the preexisting negligence per se doctrine. As we have explained, liability in those cases partly depended on proof that the defendant knew or should have known that the purchaser of alcohol was underage. Section 768.125 retains negligence-based liability, but only for defendants who know that the purchaser is underage.

Here, the guardianship did not allege that Potbelly's intended harm to someone in Faircloth's position or that the bar knew such harm was substantially certain to occur. Potbelly's' willfulness flowed from its knowledge of Dwyer's age—nothing more. To prove Potbelly's' willfulness, an issue that was not disputed at trial, the guardianship relied entirely on a stipulation read to the jury on behalf of both parties at the start of the trial:

> Potbelly's knew that Devon Dwyer was a minor and not of legal drinking age. Potbelly's had actual knowledge of Devon Dwyer's age, and notwithstanding same, willfully and unlawfully furnished alcoholic beverages to him on the night of the subject accident.

- 14 -

In other words, Potbelly's admitted to knowingly creating an unreasonable risk of harm.  That is negligence, not an intentional tort.

## III

Our answer to the certified question is yes: the action permitted by the underage drinker exception in section 768.125 is a negligence action for purposes of the comparative fault statute, section 768.81.  We approve the district court's decision to the extent it is consistent with our decision today.  We neither approve nor disapprove the district court's conclusions about how fault is to be allocated among the bars and underage patrons involved in this case.

It is so ordered.

CANADY, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

Florida law specifically and unequivocally allows civil tort actions against vendors who—like Potbelly's in this case—"*willfully*

- 15 -

*and unlawfully* sell[] or furnish[] alcoholic beverages to a person who is not of lawful drinking age." § 768.125, Fla. Stat. (emphasis added). This statutory provision, which has been in existence for more than forty years, is one of two exceptions contained in what is referred to as the dram shop act.[2] As noted in the dissent below, "the [d]ram [s]hop [a]ct is not intended in any way to reduce the liability of a vendor who willfully and unlawfully serves alcohol to underage patrons (or negligently serve[s] alcohol to habitual drunkards)." *Main Street Ent., Inc. v. Faircloth*, 342 So. 3d 232, 247 (Fla. 1st DCA 2022) (Makar, J., dissenting). Rather, "[i]t 'is meant to protect a class of persons, primarily juveniles who would buy alcoholic drinks' from the deleterious consequences of unscrupulous vendors intentionally and unlawfully allowing underage drinking." *Id.* (quoting *Booth v. Abbey Rd. Beef & Booze, Inc.*, 532 So. 2d 1288, 1290 (Fla. 4th DCA 1988)).

---

2. " 'Dram shop' is an archaic phrase from the eighteenth century used to describe a 'place where alcoholic beverages are sold; a bar or saloon.' " *Main St. Ent., Inc. v. Faircloth*, 342 So. 3d 232, 239 n.1 (Fla. 1st DCA 2022) (Makar, J., dissenting) (quoting *Black's Law Dictionary* (11th ed. 2019)).

- 16 -

In this case, we have a vendor, Potbelly's, asserting that (1) despite having willfully and unlawfully furnished alcoholic beverages to a person it knew to be underage—which resulted in intoxication and injury—and (2) despite the traditional understanding of the term "willfully" as one of intent, it may avail itself of the comparative fault defense for the purpose of lessening its liability.

Because it is not legally feasible to apply the concept of comparative negligence to an intentional tort, the majority was faced with the Herculean task of transforming a statute that expressly requires a *willful* act into a negligence action. Somehow, notwithstanding clear and unambiguous statutory language, well-settled case law, and logic to the contrary, the majority purports to do just that. Unfortunately, the sad consequence of today's action is the erroneous erosion of Florida's longstanding dram shop act. I respectfully dissent.

The victim in this case, then an eighteen-year-old high school student, was grievously injured when she was struck by a pickup truck driven by a twenty-year-old driver. It is undisputed that both

individuals were intoxicated at the time and had been served alcoholic beverages at local bars beforehand.

The record indicates that around 2 a.m. on Saturday, November 29, 2014, the victim, who was visiting Tallahassee for the weekend, was walking with relatives and friends from the Cantina 101 Restaurant and Tequila Bar to a nearby dormitory. As she walked across the street, the driver, who was driving a pickup truck at an estimated speed of as much as fifty-five miles-per-hour in a thirty miles-per-hour zone, struck her with his truck, resulting in "catastrophic and permanent injuries." Majority op. at 3.

The driver immediately fled the scene. For a few hours prior to 2 a.m., he had been a patron at another bar—Potbelly's, which also employed him as a security guard. Having worked at Potbelly's on the afternoon and evening of Friday, November 28, he returned to the bar that night. Then, over the course of about four hours, he used his fifty percent employee discount, opened up three bar tabs, and bought a total of eighteen Bud Light beers and six bourbons. At trial, he admitted that he "probably had a beer in [his] hand the entire evening." Thus, this case did not involve a typical situation where an underage person gained admission to a bar using a

- 18 -

credible false identification.  Indeed, Potbelly's stipulated at trial that "[o]n the evening of November 28, 2014, and the morning of November 29, 2014, Devon Dwyer consumed alcoholic beverages on the premises of Potbelly's," that "Potbelly's knew that Devon Dwyer was a minor and not of legal drinking age," and that "Potbelly's had actual knowledge of Devon Dwyer's age, and notwithstanding same, willfully and unlawfully furnished alcoholic beverages to him on the night of the subject accident."

Facts like these underscore the decision of the Florida Legislature to allow civil tort actions against vendors who "willfully and unlawfully" serve alcoholic beverages to underage persons.  The issue before this Court is whether a defense of comparative fault is applicable in such cases.

**The Underlying Cause of Action Is Not a Negligence Action**

I fundamentally disagree with the majority's conclusion that the underlying cause of action, alleging the willful and unlawful furnishing of alcoholic beverages to an underage person (and the resulting harm), is a negligence action for purposes of Florida's comparative fault statute.

- 19 -

This Court adopted the doctrine of comparative negligence in *Hoffman v. Jones*, 280 So. 2d 431 (Fla. 1973). There, we explained: "[T]he jury should apportion the negligence of the plaintiff and the negligence of the defendant; then, in reaching the amount due the plaintiff, the jury should give the plaintiff only such an amount proportioned with his negligence and the negligence of the defendant." *Id.* at 438 (citing *Florida Cent. & P.R. Co. v. Foxworth,* 25 So. 338 (Fla. 1899)). Notably, "[t]his concept require[s] juries to apportion fault on a percentage basis thereby allowing for meaningful comparison of *analogous types of negligent conduct*." *Faircloth,* 342 So. 3d at 240 (Makar, J., dissenting) (emphasis added).

In 1986, the Florida Legislature codified the comparative fault statute at section 768.81, Florida Statutes. The statute, which has been amended multiple times over the years, provides clear parameters for its application. Subsection (1)(c) defines a "negligence action" as: "without limitation, a civil action for damages based upon a theory of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories," and

importantly, provides that "*[t]he substance of an action, not conclusory terms used by a party, determines whether an action is a negligence action.*" (Emphasis added.) Moreover, subsection (4) excludes "any action based upon an intentional tort." Judge Makar's dissent succinctly describes the rationale for excluding intentional torts:

> To safeguard comparison of negligence-like claims, the legislature said that the "substance of an action, not conclusory terms used by a party, determines whether an action is a negligence action." This rule of interpretation is important because it prevents intentional tortfeasors from trying to characterize their misconduct as a form of negligence to shift responsibility to others and thereby reduce their liability.

*Faircloth*, 342 So. 3d at 240 (Makar, J., dissenting) (citation omitted). Although in my view, the case before us is grounded in intentional tort, Judge Makar also reasons that the comparative fault statute's limitation to negligence and like theories would also exclude "extreme forms of negligence, such as 'gross negligence' or 'willful negligence.'" *Id.*

The characterization of the complaint against Potbelly's as a negligence action is misplaced because "[t]he complaint was . . . grounded in specific language most closely understood to be

- 21 -

intentionally tortious misconduct rather than a species of negligence as defined in the plain language of the comparative negligence statute." *Id.* at 241. The complaint alleged the following: "On the evening of November 28, 2014[,] and early morning of November 29, 2014, agents or employees of the Defendant Potbelly's *willfully and unlawfully* furnished alcoholic beverages to Devon Dwyer, *knowing* him to be a minor." (Emphasis added.) The complaint does not allege a negligent act. "[T]he 'substance' of the claim is intentional misconduct." *Id.* at 241 (quoting § 768.81(1)(c), Fla. Stat.).

> Judge Makar cogently summarizes in his dissent:
>
> [U]nequivocal language of Florida's comparative negligence statute applies only to "negligence actions" and not to intentional torts such as a vendor "willfully and unlawfully" giving alcohol to a minor. The legislature intended that only "negligence actions" be used as comparators for determining fault due to the impossibility of comparing negligent acts with intentional ones. Because the substance of the claim against Potbelly's is based on intentional tortious misconduct, the trial court correctly ruled that Florida's comparative negligence statute—by its own terms—is inapplicable.

*Id.* at 248 (quoting § 768.81, Fla. Stat.). Indeed, "[i]t would be a 'perverse and irreconcilable anomaly' to allow" a vendor that willfully and unlawfully furnishes or sells alcoholic beverages to an

- 22 -

underage person "to 'diminish or defeat' its responsibility by comparing and thereby apportioning its fault contrary to the legislature's will." *Id.* (quoting *Slawson v. Fast Food Enters.*, 671 So. 2d 255, 258 (Fla. 4th DCA 1996)).

The egregious facts of this case make it especially unsuited for the majority's holding. This is not a case where a store clerk failed to check a customer's identification and unwittingly sold alcohol to an underage person. Here, Potbelly's repeatedly, time and again over a period of hours, furnished beer and liquor to a person who was actually employed by Potbelly's and known to be underage. That simply cannot be considered negligent misconduct. It was intentional, and Potbelly's should not be allowed to benefit from the comparative fault statute to lessen its liability.

For these reasons, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance & Direct Conflict of Decisions

First District - Case No. 1D2019-4058

(Leon County)

David J. Sales and Daniel R. Hoffman of David J. Sales, P.A., Sarasota, Florida; Donald Hinkle of Hinkle Law, Tallahassee, Florida; and Mark Avera of Avera & Smith, LLP, Gainesville, Florida,

for Petitioner

Raoul G. Cantero and Veronica Gordon of White & Case LLP, Miami, Florida; and Angela C. Flowers of Kubicki Draper, Ocala, Florida,

for Respondent

Joseph W. Jacquot and Kenneth B. Bell of Gunster Yoakley & Stewart, P.A., Tallahassee, Florida; and William J. Schifino and John A. Schifino of Gunster Yoakley & Stewart, P.A., Tampa, Florida,

for Amici Curiae Florida State University Board of Trustees, acting for and on behalf of Florida State University, and University of Florida Board of Trustees, acting for and on behalf of University of Florida

Kansas R. Gooden of Boyd & Jenerette, P.A., Miami, Florida; and Elaine D. Walter of Boyd Richards Parker & Colonnelli, P.L., Miami, Florida,

for Amicus Curiae Florida Defense Lawyers Association